## Richmond

WALTER W. HORNER, ET AL. v. WILLARD M. AHERN, ET AL.

March 6, 1967.

Record No. 6361.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Richard C. L. Moncure* (*Robert Randolph Jones,* on brief), for the plaintiffs in error.

*Francis C. Lee* (*Leslie L. Mason; McCaul and Pearsall,* on brief), for the defendants in error.

Carrico, J., delivered the opinion of the court.

In this action of fraud and deceit, the plaintiffs, Walter W. Horner and Harriette M. Horner, sought recovery of damages for misrepresentations allegedly made to them concerning termite damage in a house which they purchased from Willard M. Ahern and Reeves M. Ahern through the real estate firm of T. &. T. Company, Inc. The Aherns, the real estate firm, and two of its agents and employees, Karl N. Reidelbach and B. L. Dillard, III, were all named parties defendant to the plaintiffs' motion for judgment.

The defendants demurred to the motion for judgment, and their demurrers were sustained. The plaintiffs were granted this writ of error to the final order of the trial court dismissing their action.

Since the sole question to be determined is whether the motion for judgment, as amplified by a bill of particulars filed by the plaintiffs, set forth a sufficient case of fraud and deceit, we turn our attention thereto and find that the following situation was alleged:

The Aherns were the owners of a tract of land on Genito Road in Chesterfield County, containing 102 acres with improvements, including a dwelling. Mrs. Horner, in response to a newspaper advertisement of the property, telephoned Reidelbach; and thereafter she and her husband visited the property, inspected the house, and observed its condition "to the extent that a casual visual inspection would disclose its condition."

Negotiations between the parties resulted in a contract dated April 23, 1964, prepared by Reidelbach on a printed T. & T. Company form, and executed by the plaintiffs on April 30 and by the Aherns on May 1.

The contract contained a provision that "Purchaser wishes termite certificate furnished by seller*." A footnote provided that "*If termites are present, seller will stand cost of treatment or, if termite damage is found purchaser may be relieved of the conditions of this contract."

On May 22, 1964, T. &. T. Company, over the signature of Reidelbach, addressed a letter to Horner enclosing a "copy of termite inspection for the property you have purchased on Genito Road from Mr. and Mrs. Willard Ahern." The enclosure was a report dated May 19, 1964, of the "Termite-Bureau of Real Estate Owners A Division of DeHiDrate Inc.," addressed to the T. & T. Company. The report stated:

"We have inspected the above property and found it to contain an infestation of termites. It has been chemically treated for the elimination and prevention of same for a period of ten (10) years or more as per the following guarantee. We have also inspected the property for other wood destroying infestation and found none to be present."

Following receipt of the Termite Bureau's report, Horner telephoned Reidelbach and was informed by the latter that "if the Termite Bureau's report did not specify that there was termite damage then there was no termite damage."

Relying upon the report of the Termite Bureau and the representation of Reidelbach "and having no indication of termite damage from said report or otherwise," the plaintiffs settled for the property, paid the purchase price therefor, and took possession thereof.

After taking possession, the plaintiffs commenced repairs and alterations to make the house "suitable for their purposes as their own home." During the course of the work, extensive hidden termite damage was discovered by the workmen and reported to the plaintiffs.

An investigation conducted by the plaintiffs showed that subsequent to the date of their contract and prior to the date of the Termite Bureau's report and the date of settlement, the T. & T. Company had received a report, dated May 12, 1964, from Orkin of Richmond, which "disclosed and reported extensive termite infestation and damage necessitating extensive repairs and treatment of the infestation." Dillard, the president of T. & T. Company, "concealed" the Orkin report; the contents of the report were withheld from the

plaintiffs by all the defendants; and it was represented to the plaintiffs that "while termites were present there was no damage."

The Aherns "had lived in the property and had had it inspected for termites and termite damages on previous occasions and in each instance had received reports of extensive termite infestation and damage," but they "concealed and failed to disclose the fact that they knew that the dwelling was extensively damaged by termites at the time the contract was made and at the time of settlement thereunder."

The plaintiffs "would have refused to consummate the transaction and would have demanded that they be relieved of the conditions of the contract had they been advised of the contents of the Orkin report and of the fact that there was extensive termite damage throughout a substantial part of the dwelling house."

The plaintiffs expended the sum of $6,075.00 for repairs to the dwelling before they discovered the termite damage. The plaintiffs had the house appraised after the damage was found. They learned that, if in good condition, its value would be $12,000.00 but that it would, in the appraiser's opinion, "be unsalable in its condition caused by termites."

The defendants, in their brief, discuss at length a contention that they "did not withhold or conceal a material fact." That was not one of the grounds of demurrer in the trial court, and we will give it no further attention except to say that there were, in the plaintiffs' motion for judgment and bill of particulars, sufficient allegations of fraudulent withholding and concealment to withstand attack by demurrer.

There are two grounds of demurrer before us. The first is:

"The motion for judgment admits that plaintiffs knew from the Termite Bureau report that termites were or had been present in the house, which knowledge would have put a reasonable man on notice that there might be termite damage to the house. Hence plaintiffs did not reasonably rely upon the representations or concealments, if any, of defendants, and cannot claim to have been misled by the fraud, if any, of defendants."

The law is well settled that:

" 'Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both

parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.'" *Costello* v. *Larsen,* 182 Va. 567, 571, 572, 29 S. E. 2d 856, quoting from Cooley on Torts, p. 487.

And it is also true that if a purchaser is given or secures information as to the condition of property such as would excite the suspicions of a reasonably prudent man, he is then under a duty to ascertain the true condition for himself and cannot rely upon the representations of the vendor. *Poe* v. *Voss,* 196 Va. 821, 826, 86 S. E. 2d 47.

But all that does not mean that it can be said, as a matter of law, as the defendants would have us say, that "any infestation of termites . . . must have resulted in some damage" and that, consequently, when the plaintiffs received the Termite Bureau report, they were required to investigate further to determine the extent of such supposed damage. The presence and activity of termites are, generally, matters upon which the opinions of experts are required; and, sometimes, even the experts cannot agree. See *Murphy* v. *McIntosh,* 199 Va. 254, 99 S. E. 2d 585.

Furthermore, there is a very important exception to the rule that a purchaser is bound to discover the true condition for himself if he has information which would excite the suspicions of a reasonably prudent man. That exception is that the vendor must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make. *Lake* v. *Tyree,* 90 Va. 719, 724, 19 S. E. 787.

The plaintiffs are entitled to the benefit of the just-noted exception in view of the allegations of their motion for judgment and bill of particulars. If those allegations are proved, a jury would be entitled to infer and conclude that the defendants, responsive to the termite clause in the contract, employed Orkin of Richmond to inspect the house and to submit a report; that the defendants were not satisfied with the Orkin report because it disclosed the precise condition which would have brought the contract to an end; that the Orkin report was concealed from the plaintiffs and that the Termite Bureau was then employed to inspect the property and to submit another report; that the second report showed infestation, which was corrected, but no damage; that when questioned, Reidelbach stated to the plaintiffs, "if the Termite Bureau's report did not specify that there was termite

damage then there was no termite damage"; and that the defendants' actions were designed to throw the plaintiffs off their guard and to deter them from making further investigation.

But, the defendants argue, the plaintiffs were not entitled to rely upon Reidelbach's statement that "there was no termite damage" because it was a mere expression of opinion as to the extent of such damage or as to the effect of a written instrument.

Reidelbach's statement cannot be considered, however, in such a light vein. It was more than the expression of an opinion—it dealt with a matter of fact. Reidelbach did not say, according to the plaintiffs' allegations, that there was some damage; he said there was no damage. He did not merely interpret the report; he supplemented it by a factual assertion.

But even an expression of opinion, made under the circumstances alleged here, may amount to an affirmation of fact sufficient to support an action for fraud and deceit. According to the allegations, Reidelbach knew, when he made the statement to the plaintiffs, that the Orkin report showed extensive termite damage. Reidelbach, with exact knowledge of the real situation from the Orkin report, nonetheless asserted as true that which, allegedly, he knew to be false in order to induce the plaintiffs to settle upon their contract. If all that be proved, there should be no escape from the consequences of the allegedly false statement on the ground that it was merely the expression of an opinion. *Poe* v. *Voss, supra,* 196 Va., at p. 825; *Strickland* v. *Cantonwine,* 140 Va. 193, 212, 213, 124 S. E. 292; *Grim & al.* v. *Byrd,* 32 Gratt. (73 Va.) 293, 302, 303.

The situation here is unlike that in *Poe* v. *Voss, supra,* relied upon by the defendants. In that case, the controversy involved a defective furnace in a house purchased by the plaintiffs. Prior to signing the sales contract, the plaintiffs were told by the seller's agent that "there was something wrong with the controls, he did not know what," whereas, in fact, there was "a great big crack" in the furnace itself. Thereafter, the plaintiffs requested and were given permission to have the furnace examined by a disinterested person. The plaintiffs and a friend, who was apparently in the furnace repair business, examined the furnace, but failed to discover the crack. The plaintiffs then settled for the property; and when their friend was vacuum cleaning the furnace, he discovered the crack. The plaintiffs were required to install a new furnace. They brought an action to recover

damages for the misrepresentations which allegedly induced them to buy the property.

Recovery was denied, the court holding that if, after a representation is made, the purchaser is given the opportunity to examine into the real facts and undertakes a partial investigation, he is "charged with all the knowledge he might have obtained had he pursued the inquiry to the end with diligence and completeness." 196 Va., at p. 827.

Here, according to the plaintiffs' allegations, the termite damage was hidden, and it was not discovered until more than $6,000.00 had been expended for repairs and alterations to the dwelling. There is no indication that, after the alleged representations were made to them, the plaintiffs were given the opportunity to examine into the real facts or that they undertook a partial investigation, as was true in *Poe* v. *Voss*. That case is, therefore, not controlling here.

The case now before us is more closely akin to *Murphy* v. *McIntosh, supra*, relied upon by the plaintiffs. There, the purchasers, prior to executing the contract, several times questioned "whether there were or had been termites in the property." They were told by the seller's agent, Johnston, "that he knew of no termite activity there" when, in fact, the house was infested with termites and had been inspected and unsuccessfully treated therefor. A recovery in favor of the purchasers was upheld, the court stating:

"Johnston's answers contained only a part of the truth; while his principal, Miss Murphy, was fully aware of the whole truth. His answers dealt with matters of fact, not matters of opinion, and were calculated to mislead the [purchasers] and deter them from making an independent investigation. Whenever the [purchasers'] suspicions were aroused, they were quieted by the assurance of Johnston." 199 Va., at p. 261.

The other ground of demurrer requiring our attention is as follows:

"The motion for judgment sets forth the terms of the contract which provide only for rescission in case termite damage is found, yet, by asking for damages, plaintiffs seek to avoid those terms and still to affirm the contract of which they are the essence. Whether plaintiffs seek to affirm or avoid the contract, their only remedy is a suit for rescission in equity."

The defendants recognize the general rule that "one complaining of fraud and deceit may either rescind what was done as a result thereof or affirm the action taken and sue for damages." The defendants argue, however, that under the contract the plaintiffs' only remedy, in the event termite damage was found, was to "be relieved of the conditions of this contract" or, in other words, to rescind the contract. By retaining the property and bringing an action for damages, the defendants say, the plaintiffs are seeking to affirm that part of the contract entitling them to the property and to disaffirm that part prescribing their sole remedy "if termite damage is found."

There are two very basic fallacies in the defendants' position with regard to the contractual clause, "if termite damage is found purchaser may be relieved of the conditions of this contract." The first is that the contract clearly contemplated that the clause would become operative only if knowledge of termite damage was brought home to the plaintiffs before settlement, and they were then given an opportunity to exercise the election contained in the words, "may be relieved of the conditions of this contract." While the contractual clause may have fixed the remedy applicable to that set of circumstances, it certainly did not fix the remedy for the fraudulent concealment of the very fact which, if present, it was designed explicitly to disclose.

If the plaintiffs' allegations be true, it was because of the defendants' fraud that knowledge of the termite damage was kept from the plaintiffs, thus preventing them from using the escape clause prior to settlement. It was, allegedly, because of the defendants' fraud that the plaintiffs had satisfied all the conditions imposed upon them by the contract before they discovered the fraud. To say under these circumstances that the plaintiffs have no right to elect to bring an action for damages would, in effect, permit the defendants to set up their own fraud as a defense. This they cannot do.

The other fallacy in the defendants' position is that the plaintiffs' action of fraud and deceit is not based upon the contract, but is independent of it. The action is not in contract, but in tort. The bringing of the action has the effect of affirming the contract, but that does not constitute a release or waiver of the right to seek recovery of damages for the alleged tort. 24 Am. Jur., Fraud and Deceit, § 200, p. 21, § 212, p. 39.

The plaintiffs do not seek to disaffirm the clause in the contract relating to termite damage. To the contrary, they rely heavily upon

that clause for their position that there was imposed upon the defendants the duty to make full disclosure, prior to settlement, of the true situation with respect to termite damage. It is for the breach of that duty that the plaintiffs seek recovery for fraud and deceit.

The trial court erred in sustaining the demurrers of the defendants. For that error, the judgment will be reversed, the plaintiffs' motion for judgment reinstated, and the case remanded for further proceedings.

*Reversed and remanded.*