JAMES L. BORIS, ET AL.

V.

RICHARD L. HILL, ET AL.

Record No. 860116

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*C. Richard Cranwell (Patrick S. Shiel; Cranwell, Flora & Moore*, on brief), for appellants.
*C. Jacob Ladenheim (Ladenheim & Campbell*, on brief), for appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal arises from a dispute over the purchase and sale of residential realty. The main contention by the vendee is that the property contained a defective septic system and that the defects were concealed in an effort to induce a sale. The vendor submits, on the other hand, that a *caveat emptor* instruction should have been granted so the jury could have considered whether, upon diligent investigation, the vendee could have discovered the alleged defects. In our opinion, such an instruction should have been granted.

In 1976, James and Charlotte Boris (the Sellers) purchased a home in Botetourt County. They lived there for six years. In July 1982, they learned that Mr. Boris was being relocated by his em-

ployer to the Tidewater area of Virginia. They listed the house for sale with Betsy Settles, a local realtor.

At the time the Sellers contacted Settles about the listing, she made an inspection of the house and found it to be "nice and beautiful." She asked whether the Sellers had had any trouble with the septic tank; they told her "no." But they also told her that the tank had been pumped out once in 1979. The information Settles acquired from the Sellers was made known to Richard and Rachel Hill (the Buyers).

Settles showed the house to the Buyers. They made two inspections of the house and then, in January 1983, submitted a contract to purchase the house. During the two pre-contract inspections, the Sellers were not home and the Buyers were free to look anywhere they liked.

After the execution of the contract, but before the closing, which was scheduled for February 1983, the Buyers, along with Settles, made a third inspection of the house. This was on the day the Sellers were moving out so the Sellers were present. The Buyers discovered a "horrible odor" in the utility room where two small dogs were kept. They did not ask the source of the odor; they simply assumed that it came from the dogs. Settles made this assumption even though she testified that she had never smelled such an odor before. The odor was not found anywhere else in the house.

Mrs. Hill flushed all the toilets in the house. The one in the basement flushed slowly. When she pointed this out to Mr. Boris, he said that that toilet had not been used much lately.

Mrs. Hill asked Mr. Boris whether he had ever had any trouble with the septic tank. He replied, "no." She asked him when he had last had the septic system pumped. He replied that the system would not need pumping for another "good three years" because it had been pumped once not long ago. No one asked the reason for the recent pumping. Mrs. Hill said she saw nothing that day to suggest that there was any problem with the septic tank.

On the third inspection, the Sellers also advised the Buyers that there had been water damage to the basement caused by a broken washing machine water hose. The Sellers explained that the resulting flooding had caused them to replace the downstairs carpet, replace various items of furniture, and make other repairs. Even so, a drain in the floor in the utility room where the dogs were kept was plugged. This drain, if left open, might have cut the risk

of another flood. The Sellers explained that they kept the drain plugged for fear the dogs or the dogs' food or toys might fall into the hole.

Each time the Buyers visited the house there was a recreational vehicle parked in the driveway. When they saw the empty driveway, the Buyers observed that it had a hole in it which was covered with salt.

The Buyers moved into the house on the last day of February 1983. On March 18, 1983, it rained. Raw sewage backed up into the drains in the house, including the shower drain. Thereafter, from March 1983 through October 1985, the Buyers had the septic tank pumped out thirty-two times.

The Buyers sued to rescind the contract, to recover compensatory damages, and to recover punitive damages. As indicated, the case was tried to a jury. The jury found in favor of the Buyers.

The Sellers offered the following instruction:

> When the buyer is given ample opportunity to examine the property prior to closing, the buyer is charged with all the knowledge he or she could obtain through diligent investigation, and is then bound by his or her acceptance of the property.

The trial court rejected this instruction without explanation.

The Sellers argue that they were entitled to the instruction because the Buyers contended that the septic system was defective at the time of sale and that if this were so, the Sellers contend further that a diligent inspection would have revealed the defect. In addition, the Sellers submit that the Buyers were possessed of sufficient information to cause them to investigate.

We stated in *Horner* v. *Ahern*, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967), that

> if a purchaser is given or secures information as to the condition of property such as would excite the suspicions of a reasonably prudent man, he is then under a duty to ascertain the true condition for himself and cannot rely upon the representations of the vendor.

More recently, in two cases in which we affirmed judgments on behalf of vendors, we have made clear that the doctrine of *caveat emptor* continues to have vitality in the Commonwealth. *Watson*

v. *Avon Street Center*, 226 Va. 614, 311 S.E.2d 795 (1984); *Kuczmanski* v. *Gill*, 225 Va. 367, 302 S.E.2d 48 (1983). Those cases are not directly on point because they do not consider the question whether and under what circumstances a *caveat emptor* instruction should be granted.

■ As a general proposition, it is well established that a litigant is entitled to an instruction if it is supported by the evidence and sets forth his theory of the case. *Nelms* v. *Nelms*, 236 Va. 281, 374 S.E.2d 4 (1988). The Buyers in this case knew that the septic system had been pumped out even though the Sellers said nothing was wrong with it; they knew there was a horrible smell in the utility room which did not seem to be related to the dogs which were kept there; they knew that a floor drain had been plugged and left plugged, even after the basement had flooded; they knew the downstairs toilet flushed slowly; they were given unrestricted access to the house and could have looked where they liked. In our opinion, this was enough evidence to warrant the grant of the *caveat emptor* instruction, submitting the issue to the jury.

■ The Buyers advance four reasons why it was proper to refuse the *caveat emptor* instruction; all are without merit. The first is that *caveat emptor* was never the Sellers' theory of the case. The Buyers submit that the Sellers simply denied that there was any defect in the septic system at the time of the closing. Thus, the Buyers argue, it would be inconsistent to permit the Sellers to contend, on the one hand, that there were no defects while contending, on the other hand, that the Buyers should have found the defects. We reject this argument. A defendant in a case such as this is not precluded from contending that the system was not defective at the time of the closing, and contending, in the alternative, that if it was defective, the buyer should have discovered the defect. *Cf.* Rule 1:4(k).

■ Second, the Buyers contend the instruction should not have been granted because the Sellers threw the Buyers off guard or diverted their attention from inquiring about defects in the property. In advancing this argument, the Buyers rely on *Horner* v. *Ahern*, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967) and *Armentrout* v. *French*, 220 Va. 458, 466, 258 S.E.2d 519, 524 (1979). In those cases, this Court stated that an important exception to the doctrine of *caveat emptor* is that it does not apply where the seller says or does anything to throw the purchaser off

guard or to divert him from making the inquiries and examinations that a prudent buyer ought to make.

■ *Ahern* and *Armentrout* are not concerned with the grant or refusal of a *caveat emptor* instruction. They simply announce and apply an exception to the rule of *caveat emptor*. They are not authority for the proposition that the mere claim by the buyer that he was thrown off guard means that the seller is not entitled to a *caveat emptor* instruction. In our opinion, on the facts of this case, it was a jury question whether the Buyers were thrown off guard or reasonably should have been thrown off guard by what the Sellers told them. According to the approach advanced by the Buyers, in any case involving *caveat emptor* the trial court would, before granting the instruction, be required to make a threshold legal ruling on whether the buyers were thrown off guard; only then could the trial court safely proceed to decide whether the *caveat emptor* instruction should be granted. Such an approach would invade the province of the jury; we reject it.

■ Third, the Buyers contend that the failure to grant the *caveat emptor* instruction was, at worst, harmless error. They contend that other instructions which were granted eliminated the need for a specific instruction on *caveat emptor*. Particularly, they point to Instruction 8 which concerned proof of fraud. That instruction advised the jury that in order to find fraud the jury had to conclude that the Sellers had made willful misrepresentations to the Buyers. According to the argument, given Instruction 8 and given the finding of fraud, the jury would have rejected *caveat emptor* as inapplicable under the *Ahern-Armentrout* exception. The obvious flaw in this argument is that no one knows what may have happened had the jury been confronted with both instructions, and thus been required to weigh the evidence related to each instruction. A jury verdict in the absence of an instruction which should have been granted provides no insight into what the jury might have done had it been properly instructed.

■ Finally, the Buyers argue that this case is controlled by *Armentrout*. They submit that their proof of a defective septic system is equal to the proof adduced in *Armentrout*. But *Armentrout* is distinguishable. First and foremost, it did not concern whether a *caveat emptor* instruction should have been granted. The issue there was whether there was sufficient credible evidence to support the jury's finding that the septic system was defective at the time of the sale.

Further, *Armentrout* is factually dissimilar. There, inspections were by prearrangement only; whenever the buyers visited, the house was filled with cooking odors or the smell of a wood fire; one fire was burning on a spring-like day; the sellers put the house up for sale one month after moving in; they gave conflicting stories of the reason for moving; they had altered the toilet tanks so they would not fill up with water, thus reducing the risk that when flushed they would overflow; the stench permeated the house; one rug was saturated with foul smelling fluid; the buyers offered to pay to have the system dug up to determine whether the system was defective — this offer was rejected.

For all the foregoing reasons, the judgment of the trial court will be reversed and the case remanded for a new trial consistent with this opinion.

*Reversed and remanded.*