## CIRCUIT COURT OF THE CITY OF RICHMOND

Eric Taylor Moore, Jr.,
and Kristina K. Moore

v.

Ladd Furniture, Inc.

November 27, 1990

Case No. LS 956-2

By JUDGE ROBERT L. HARRIS, SR.

This matter comes before the court on defendant's Demurrer and Motion to Dismiss. The demurrer is sustained as to counts two and three without leave to amend, sustained as to count five with leave to amend, and overruled as to count four. Nonsuit is granted as to count one pursuant to plaintiff's motion at oral argument.

"A demurrer admits the truth of all material facts that are properly pleaded. According to this rule, the facts admitted are those expressly alleged, those which are impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 384 S.E.2d 752 (1989). Cognizant of these principles, the facts alleged are as follows.

Defendant, Ladd Furniture, Inc., hereinafter referred to as "Ladd" is a North Carolina business. It formerly owned the land and building located at 3100 North Hopkins Road, Richmond, Virginia. Flammable liquid, specifically lacquer and/or lacquer thinner, was stored in pipes insulat-

ed inside the building. On March 26, 1985, Ladd sold the property to Hopkins Road Associates, a partnership, but concealed and failed to disclose that the flammable liquid was stored on the premises. Hopkins Road Associates conveyed the property to the plaintiffs, E. Taylor Moore, Jr., and Kristina K. Moore, hereinafter referred to as "Moore," on December 10, 1986. On March 10, 1987, the premises were damaged by fire. The concealed flammable liquid was the proximate cause of the fire.

The motion for judgment contains five counts, the first of which was nonsuited at oral argument. Count two attempts to impose strict liability for engaging in an abnormally dangerous activity on the property. Improper storage and disposal of hazardous substances is alleged to be an abnormally dangerous activity.

Strict liability is imposed upon those engaged in an abnormally dangerous activity. Restatement (Second) of Torts § 519 (1977). Determining whether an activity is abnormally dangerous is within the sole province of the court. *Id.* § 520, Comment 1 (1977). The following factors are to be considered in determining whether an activity is abnormally dangerous.

> (a) existence of a high degree of risk of some harm to the person, land, or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.* § 520.

In consideration of the above standards and relevant case law, the defendant was not engaged in an abnormally dangerous activity. The Supreme Court in *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 406, 368 S.E.2d 268, 282 (1988), referred to the Restatement criteria and concluded

that the storage and disposal of Pentaborane gas was not an ultrahazardous activity. Pentaborane gas is highly toxic, being 2,000 times as deadly as hydrogen cyanide. Brief exposure to five parts of Pentaborane per billion parts of air is a fatal dosage. *Id.* at 271. The court found that the risks associated with handling this gas could have been eliminated by use of reasonable care as the U.S. Government had used and disposed of large quantities of the gas without injury. *Id.* at 271. Thus, it did not meet the definition of an abnormally dangerous activity. *Id.* at 282.

Collection of highly explosive methane gas was not determined to be an abnormally dangerous activity in *Robinson v. City of Richmond*, 16 Va. Cir. 263 (1989). Storage and disposal of Pentaborane gas is inherently more dangerous than methane gas, lacquer, or lacquer thinner. The dangers associated with storage and disposal of lacquer or lacquer thinner in the case at hand cannot exceed the dangers of Pentaborane. Accordingly, Moore has failed to state a cause of action in count two.

Counts three and four of the Motion for Judgment are based on Ladd's alleged duty to reveal to Hopkins Road Associates that a hazardous substance was stored in the premises. Based on this duty, count three attempts to impose strict liability, and count four alleges negligent or intentional breach of this duty.

Plaintiff asserts that the case at hand falls squarely under the holding of *Philip Morris*, 368 S.E.2d at 268. *Philip Morris*, however, is factually distinguished from the case at hand.

Liability in *Philip Morris* was premised on the Restatement (Second) of Torts §§ 366 and 373 (1965). Both sections appear under the topic "Liability of Possessors to Persons Outside of the Land." *Id.* at 259. In both sections, liability is specifically tailored to harm caused to persons or property outside of the land. Unlike *Philip Morris*, where all of the plaintiffs were "persons outside of the land," the plaintiffs in the case at hand are subsequent owners of the land. Neither the *Philip Morris* opinion nor the sections of the Restatement upon which it relied are dispositive of counts three and four of the Motion for Judgment.

Alternative provisions of the Restatement are more applicable. Sections 351 through 354 provide the principals of "Liability of Vendors and Other Transferors of Land to Persons on the Land." Restatement, *supra*, at 234-239. The general rule of *caveat emptor* appears in § 352. The exception to the general rule, as stated in § 353, is as follows:

*Undisclosed Dangerous Conditions Known to Vendor.*

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise, the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

*Id.* § 353.

Section 354(2) then clarifies that § 353 "applies to any former owner of land who has voluntarily transferred the ownership and possession *inter vivos*." *Id.* at § 354(2).

Count four states a cause of action pursuant to the principals enunciated by §§ 351 through 354. This count states that Ladd concealed the dangerous condition of which it had knowledge or should have had knowledge from

Hopkins Road Associates. Section 354(2) provides the Moores with the standing to sue Ladd directly.

Ladd has argued that the principles contained in sect. 353 are not recognized in Virginia. Although there are no Virginia cases which cite this section, the principles are consistent with the law of this Commonwealth.

The common law doctrine of *caveat emptor* continues to operate with force. *Bruce Farms v. Coupe*, 219 Va. 287, 247 S.E.2d 400 (1978). Case law has recognized exceptions to this doctrine. It is well established that seller must not say or do anything to divert the purchasers from making inquiry or examination of the property. *Borres v. Hill*, 237 Va. 160, 375 S.E.2d 716 (1989).

The underlying theory of Section 353 is consistent with the exception which Virginia case law has carved from the doctrine of *caveat emptor*. Counts three and four are based on the duty expressed in Restatement § 353. Count four applies a standard of negligent or intentional breach of the duty, whereas count three applies a strict liability standard. Application of a strict liability standard would be inappropriate, thus the demurrer to count three is sustained. The demurrer to count four is overruled as a claim consistent with the exception to the doctrine of *caveat emptor* as stated.

Count five attempts to allege a cause of action for the breach of warranty of "use and enjoyment." The exact nature of the claim is difficult to discern from the imprecise language of the pleading. Elaboration of count five made by counsel for plaintiffs at oral argument has failed to elucidate the claim:

> Count 5 is a warranty count. If the defendant is correct that there must be some kind of privity between the vendor and the plaintiff, then that count cannot stand. But our position is that under the circumstances of this case, we are entitled to show that the plaintiffs in this case were vendees in the sense that they assumed all the rights and obligations of the original vendees. And we are entitled to show, if they did, that they assumed the mortgage on the property running to the vendor or for the protection of the vendor. But those are factual issues.

> So we submit that there are factual issues which preclude dismissing the case at this point. Discovery, admissions, interrogatories may disclose, may well disclose, that some of these counts might fail on summary judgment. But we are here today on a demurrer, and we submit that the case is well pleaded, that consideration of facts outside the record is inappropriate.

(Tr. 11).

Plaintiffs may be attempting to claim breach of a real property warranty of title. At common law, covenants of warranty were future covenants running with the land. *Adams v. Seymour*, 191 Va. 372, 61 S.E.2d 23, 26 (1950). Covenants of warranty include general warranty, special warranty, further assurances, and quiet possession. Although it is unclear, plaintiffs may be attempting to state a cause of action for breach of the covenant of quiet possession.

The covenant of quiet possession guarantees that the covenantee will not be disturbed as a result of any claim arising from the covenantor or any predecessor in title. Va. Code § 55-72. If plaintiffs rely on the covenant of quiet possession, their reliance is misplaced. Although it is a future covenant, breach is premised on actual or constructive eviction. *Tull v. Fleming Bros. Lumber Mfg. Co.*, 189 Va. 171, 52 S.E.2d 150, 155 (1949). Constructive eviction occurs when actual possession of the property is in a third party with paramount title on the date of conveyance. *Id.* Plaintiffs claim neither actual nor constructive eviction which might affect the covenants of title.

Alternatively, plaintiffs may be attempting to allege an implied warranty. The legislature has seen fit to recognize implied warranties only in the case of new homes. Va. Code § 55-70.1. There is no recognition of implied warranties in the case at hand. The demurrer to count five is sustained, with leave to amend.

For the above reasons, defendant's demurrer as to counts two and three is sustained without leave to amend and is sustained as to count five with leave to amend. The demurrer is overruled as to count four. Nonsuit is granted as to count one.