PORTSMOUTH REDEVELOPMENT AND HOUSING AUTHORITY, a political subdivision of the Commonwealth of Virginia and Commonwealth Gas Services, Inc., Plaintiffs,

v.

BMI APARTMENTS ASSOCIATES, a Virginia general partnership et al., Defendants.

Civ. A. No. 2:93CV242.

United States District Court, E.D. Virginia, Norfolk Division.

March 25, 1994.

Ralph Walling Buxton, Susan Taylor Hansen, Cooper, Spong & Davis, Portsmouth, VA, for Portsmouth Redevelopment.

James Edward Anklam, John W. Edwards, George Van Cleve, Jones, Day, Reavis and Pogue, Washington, DC, Andrew J. Sonderman, John L. Shailer, Columbus, OH, for Commonwealth Gas.

Bradfute Warwick Davenport, Jr., James Edward Ryan, Jr., Alan Dale Abert, Mays & Valentine, Richmond, VA, for BMI Apts., Berlin–Miles–Richels, Inc., B.L. Richards, E.C. Handley, Arnold Amdursky, H.G. Berlin, L.B. Taylor, E. Ransdell, III, S. Schreier, N. Schreier, J. Pitler, R.G. Richels, Morris Richels, B. Kolish, H.D. Embree, M.D. Embree, R.L. King, H.E. Gordon, C.O. Pariser and R.J. Berlin.

Thomas Rollins Watkins, Nanci Snow Bockelie, Patten, Wornom & Watkins, Newport News, VA, for Martin and Rose Shebar, Irvin Cohen, Eleanor Cohen, Sidney Coren, Shirley Coren, J. Garner and B. Kramer.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

This action was initiated by the Portsmouth Redevelopment and Housing Authority ("the Authority") and Commonwealth Gas Services, Inc. ("Commonwealth Gas") as a private cost recovery action under 42 U.S.C. § 9601 et seq. ("CERCLA"), seeking a declaration of the liabilities of the parties for the cost of cleaning up alleged hazardous waste at the Patio Plaza Apartments ("the Site"), which is located in Portsmouth, Virginia. The original defendants were BMI Apartments Associates, ("BMI"), a Virginia general partnership which currently owns the Site, and certain individuals who formerly owned it (the "Prior Owner Defendants" and the "Prior Owner Wives")[1] and James V. Bickford and Richard S. Bartley (the "Bartley–Bickford defendants").

Beginning in 1854, and for approximately one hundred years thereafter, Portsmouth Gas Company owned the Site and operated a "town gas plant" there for the purpose of producing gas from coal for street lighting and other uses. On March 3, 1961, Portsmouth Gas sold the Site to the Authority. On March 15, 1963, the Authority sold the Site to the Prior Owner Defendants pursuant to the City of Portsmouth's urban redevelopment plan. Thereafter, but before the end of 1963, the Prior Owner Defendants built an apartment complex on the Site. The Prior Owner Defendants continued to own and operate the apartment complex until 1966 when it was foreclosed upon by the Equitable Life Assurance Society of the United States ("Equitable"), which acquired the Site on foreclosure of a loan against the Prior Owner Defendants, held it for approximately 19 months, and sold it to the Bartley–Bickford defendants in 1967.[2] BMI bought the apartment complex from the Bartley–Bickford defendants in April 1985 and has owned it continuously since then.

In early 1993, Commonwealth Gas, the successor by merger of Portsmouth Gas Company, received a report from BMI stating that there may have occurred releases of petroleum hydrocarbons at the Site "at an indeterminate time in the past." Commonwealth Gas allegedly reported this information to the responsible federal authorities and attempted to reach an agreement with BMI for undertaking studies to determine the nature and extent of the contamination at the Site.[3] BMI insisted that Commonwealth Gas

1. The Prior Owner Defendants are Irvin Cohen, Sidney Coren and H. Lee Kanter. The Prior Owner Wives are Eleanor Cohen, Shirley Coren, Rose Shebar and Bette O. Kramer. The Authority and Commonwealth Gas have agreed to dismiss the claims against the Prior Owner Wives.

2. Bartley–Bickford defendants filed a third-party complaint against Equitable which moved for summary judgment. Those parties are conducting limited discovery on the issues presented by that motion.

3. Pursuant to an Order entered by the Magistrate Judge on May 27, 1993, the parties were directed to submit to the court by June 14, 1993, an agreed plan for an inspection of the Site. Subsequently, all parties moved for a stay of the action pending completion of a study necessary to determine the extent of contamination. The stay was granted and the study is under way.

purchase the Site from it, and indemnify it for all costs incurred in any remedial action. Following those demands, the Authority and Commonwealth Gas filed this declaratory judgment action.

BMI asserted counter-claims against the Authority and Commonwealth Gas and cross-claims against the Prior Owner Defendants under CERCLA, under 42 U.S.C. § 6901, *et seq.* ("RCRA") and under state law. Commonwealth Gas and the Authority have moved to dismiss Counts I, III and V of the counter-claims and the cross-claims.

Count I is brought under 42 U.S.C. § 6972(a)(1)(B), the citizens-suit provision of RCRA. In it, BMI seeks an "order requiring restitution ... for the money [BMI] has expended and will expend in the future, including attorney fees, for all actions necessary to investigate, assess or abate the conditions [at the Site] which may present an imminent and substantial endangerment to public health or the environment...." Commonwealth Gas and the Authority have moved to dismiss the RCRA claim under Fed.R.Civ.P. 12(b)(6) on the grounds that: (a) RCRA does not apply to inactive waste disposal sites; and (b) BMI did not give the notice to putative defendants which, under 42 U.S.C. § 6972(b), must precede commencement of a citizens suit under RCRA. The ground of dismissal based on failure to satisfy the notice requirement is actually a challenge to subject matter jurisdiction because notice is a jurisdictional prerequisite to institution of a RCRA citizens suit.

In Count III, BMI seeks a declaration that, under 42 U.S.C. § 9603(c), the Authority and Commonwealth Gas have forfeited their CERCLA defenses and their right to contribution because they did not notify the government of the existence of the facility within the time required by 42 U.S.C. § 9603(c). Commonwealth Gas and the Authority have moved for dismissal of Count III under Fed.R.Civ.P. 12(b)(6).

Count V is a claim by BMI for monetary damages from Commonwealth Gas and the Authority for unspecified harm suffered and to be suffered as a consequence of contamination at the Site. BMI's pleading articulates no legal theory for this damage claim, but its brief describes Count V as a claim against a seller for failure to disclose a material, latent defect in real property which is said to be cognizable under Virginia common law and the Restatement (Second) of Torts, § 353 (1965). The Authority and Commonwealth Gas allege that this count too is subject to dismissal under Fed.R.Civ.P. 12(b)(6).

The Prior Owner Defendants have joined in the positions taken by Commonwealth Gas and the Authority with respect to dismissal of Count I. Additionally, they seek dismissal of Count I because they committed no act which constitutes disposal and because the contaminants alleged to be present at the Site are not hazardous wastes within the meaning of RCRA. These additional grounds are factually dependent and cannot be decided on the pleadings as a matter of law. Indeed, the same rationale which precluded dismissal of the complaint on these theories also precludes reliance on them to dismiss the cross-claim. *See* Memorandum Opinion and Order dated June 22, 1993.

Against this background, the court now considers the motions to dismiss Counts I, III and V of the counter/cross claims.

## DISCUSSION

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must ascertain whether the factual allegations in the counter-claims and the cross-claims, taken as true and viewed in the light most favorable to BMI, "constitute 'a short and plain statement' of the claim showing that the pleader is entitled to relief." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). When assessing the legal sufficiency of the counter-claims and the cross-claims, the court is mindful of the fundamental principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

## I. *Count I—The RCRA Claim*

In the text of Count I, BMI asks for an order requiring restitution for the expenses incurred and to be incurred in investigating, assessing or abating the conditions at the Site. In the ad damnum clause, BMI asks for a declaration that Commonwealth Gas, the Authority and the Prior Owner Defendants are liable for "remedial and other response costs" and for an injunction requiring those parties to pay those costs, expert consultant fees and attorneys' fees. Hence, given a fair and reasonable reading, Count I is a claim for money damages.

### A. Applicability of RCRA to Inactive Sites

Commonwealth Gas, the Authority and the Prior Owner Defendants seek dismissal of Count I because RCRA does not, they say, apply to inactive disposal sites. This argument relies principally on decisions which hold that citizens suits cannot be brought under 42 U.S.C. § 6972(a)(1)(A), *see, e.g., McClellan Ecological Seepage Situation v. Cheney,* 763 F.Supp. 431 (E.D.Ca.1989); *Lutz v. Chromatex, Inc.,* 718 F.Supp. 413 (M.D.Pa.1988) and on language in *United States v. Waste Industries, Inc.,* 734 F.2d 159, 163 (4th Cir.1984) indicating that RCRA is a prospective statute.

Those decisions, however, are not helpful to the resolution of the issue presented here. First, unlike *McClellan* and *Lutz,* this action was brought under subsection (B) of 42 U.S.C. § 6972(a)(1), not under subsection (A). Further, *Waste Industries* did not involve a citizens suit and, in any event, it interpreted RCRA before Congress amended subsection (B) to add as a defendant any past or present owner who has contributed or is contributing to past or present disposal which may present an imminent and substantial endangerment to health or the environment.

---

4. There are cases which interpret RCRA to apply to inactive sites. *See City of Toledo v. Beazer Materials and Services, Inc.,* 833. F.Supp. 646 (N.D.Ohio 1993) (stating that the continued presence of materials can be a continuing violation of RCRA, even if the conduct which created the endangerment is not ongoing); *Gache v. Harri-*

BMI relies principally on the decision in *Tanglewood East Homeowners v. Thomas,* 849 F.2d 1568 (5th Cir.1988). In *Tanglewood,* the United States Court of Appeals for the Fifth Circuit held: (1) that the plaintiff's complaint could not be dismissed for failure to state a claim because whether a particular exclusion required dismissal was a question of fact; and (2) that RCRA empowers the courts to restrain any person who has contributed or is contributing to disposal or to order such person to take other necessary actions, thereby providing "a claim for injunctive relief based either on past or present conduct." *Id.* at 1576.

Whether RCRA applies to inactive disposal sites would not determine the issue presented in this action because it still would be necessary to determine whether it applies to owners who sold the property before RCRA's enactment. It is not necessary, though, to reach that thorny issue in order to determine that Count I is legally insufficient. Hence, the court declines to decide it[4] because, as set forth below, the court lacks jurisdiction over the RCRA claim.

### B. The Jurisdictional Issues

For the reasons set forth below, the court lacks jurisdiction over the claims advanced in Count I.

#### 1. *The Absence of Jurisdiction Over Damage Suits In A RCRA Action.*

Count I is based upon the citizens-suit provision of RCRA, which provides that:

[A]ny person may commence a civil action on his own behalf ... against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or

*son,* 813 F.Supp. 1037 (S.D.N.Y.1993) (stating that the continued presence of hazardous substances which present a threat of harm, even though the act which created the hazard has passed, constitutes a continuing violation of RCRA).

who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; ...

42 U.S.C. § 6972(a)(1)(B). The statute then provides that in such an action the district court shall have jurisdiction:

> ... *to restrain* any person who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), *to order such person to take such other action* as may be *necessary,* or both ... and to apply any appropriate *civil penalties* under section 6928(a) and (g) of this title.

42 U.S.C. § 6972(a) (emphasis added).

■ Thus, the plain language of the statute confers limited jurisdiction on the district courts in citizens suits under RCRA and the determination of liability for, and the allocation of the costs of, the cleanup of abandoned waste sites are not among those powers. This conclusion is consistent with the fact that those responsibilities are clearly absent from the eleven objectives Congress announced when it promulgated RCRA. 42 U.S.C. § 6902. It is also consistent with RCRA's regulatory and enforcement scheme for achieving those eleven objectives, all of which relate to waste management and disposal not to the cleanup of inactive waste sites. Moreover, considering that CERCLA expressly controls the allocation of the remedial and response costs involved in the cleanup of inactive sites, it is not surprising that Congress did not provide for the discharge of those responsibilities by the district courts when it amended RCRA in 1984 to confer injunctive powers on the district courts in dealing with past conduct.

Although BMI has asked for injunctive relief in the ad damnum clause of its counterclaim and cross-claim, it is clear from the language of Count I and it was admitted by BMI's counsel in oral argument that the requested injunction would be nothing more than a mandate for the payment of money. Hence, the prayer for injunctive relief is, in actuality, a prayer for past and present money damages. "A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money." *Jaffee v. United States,* 592 F.2d 712, 715 (3d Cir.1979). *See also Penn Terra Ltd. v. Dept. of Environmental Resources,* 733 F.2d 267 (3d Cir.1984). Moreover, "[b]ecause the availability of a legal remedy [such as money damages] often indicates that an applicant's injury is not irreparable, courts generally do not issue injunctions to protect legal remedies." *F.D.I.C. v. Faulkner,* 991 F.2d 262, 265 (5th Cir.1993).

■ In asking the court to award money damages for "remedial and response costs" and the costs of investigation, BMI is asking for relief that is beyond the powers of the district court to grant under the citizens-suit provision of RCRA, which only allows claims by parties "acting as private attorneys-general rather than [those] pursuing a private remedy...." *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331 (4th Cir.1983). The amendment of the citizens-suit provision has not affected this interpretation of RCRA to not allow the claimant to be the direct beneficiary of the relief. *See Walls v. Waste Resource Corp,* 761 F.2d 311, 316 (6th Cir.1985) (holding that RCRA does not expressly permit a private cause of action for damages); *Kaufman and Broad–South Bay v. Unisys Corp.,* 822 F.Supp. 1468, 1477 (N.D.Cal.1993) (declining to imply a private remedy for damages or restitution); *Commerce Holding Co., Inc. v. Buckstone,* 749 F.Supp. 441, 445 (E.D.N.Y.1990) (holding that there is no private action for damages under RCRA).

Hence, even if the citizens-suit provision of RCRA was intended to reach past activity of the sort at issue in this action, the court would be empowered only to award injunctive relief to restrain statutorily prohibited conduct and to require the offender to take such other action as may be necessary, not to award damages. In Count I, BMI's complaint seeks only monetary damages and hence that count falls beyond the court's jurisdictional reach.

2. *The Effect of RCRA's Notice Requirement.*

Count I is jurisdictionally defective for the additional reason that BMI failed to give the mandatory ninety-day notice required by § 42 U.S.C. § 6972(b)(2)(A). The notice provision provides:

*No action may be commenced* under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to

(i) the Administrator;

(ii) the State in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter.

RCRA's notice provision is jurisdictional, and consequently a court may not entertain a citizens-suit under RCRA unless the notice requirements have been met. *Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). Although BMI concedes that it did not give the required notice, it nonetheless argues that its citizens-suit should be allowed to proceed because it has alleged a violation of subchapter III of RCRA, and therefore no notice was required because of the savings clause of the notice provision.

This argument is of no avail because, as the Authority and Commonwealth Gas correctly contend, Count I does not allege a legally cognizable violation of subchapter III. The conduct of which BMI complains in Count I occurred *before* the enactment of subchapter III. As the United States Court of Appeals for the Ninth Circuit recently held:

Even if [plaintiff] had alleged a violation of a specific provision of subchapter III, however, this allegation would contain the same flaws as [plaintiff's] subsection A claim. None of the standards or rules issued under subchapter III existed until after RCRA was enacted in 1976; the dumping alleged by Ascon ceased in 1972. None of the defendants in this case could possibly have violated subchapter III by any of their activities alleged in [plaintiff's] complaint. Thus, [plaintiff] is not exempt from the 90-day notice requirement of a subsection B claim.

*Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989). BMI's reliance on subchapter III fails for the same reason and therefore BMI is not exempt from the jurisdictional notice requirement.

BMI argues that its RCRA claim is exempt from the notice requirement because it is presented as a compulsory claim under Fed.R.Civ.P. 13. That argument is erroneous because the notice requirement is jurisdictional. Nor is its application here a mere formality because the notice requirements of 42 U.S.C. § 6972(b)(2)(A) required BMI to give notice not only to Commonwealth Gas and the Authority but also to the EPA, the Commonwealth of Virginia, and to other persons covered by § 6972(b)(2)(A)(iii). Many of these significant players did not receive notice of the intent to press the RCRA claim as a counter-claim or cross-claim in this action. Of course, BMI would have been obligated to inform the court of its intentions so that appropriate case-management provisions, including a provision for the delayed filing of counter-claims and cross-claims, if necessary, could have been inserted in the pretrial order.

This would not have been a useless exercise here, because the administrative agencies and the putative counter-claim and cross-claim defendants might well have been able to convince BMI that no RCRA claim existed. However, without regard to the possible outcome of such discussions, notice is a jurisdictional prerequisite for a RCRA claim and the courts are not free to waive the jurisdictional requirements. For this additional reason, the court lacks subject-matter jurisdiction over the RCRA claim advanced by BMI in Count I.

## II. Count III—The Request For A Declaration Of Forfeiture Under CERCLA Section 103(c)

Count III seeks a declaratory judgment that the Authority, Commonwealth Gas and the Prior Owner Defendants are barred from seeking contribution or indemnity from BMI, and from asserting any defenses to CERCLA liability, because they failed to comply with the notice provision found in 42 U.S.C. § 9603(c) which provides, in pertinent part:

> Within one hundred and eighty days after December 11, 1980, any person who owns or operates or who at the time of disposal owned or operated ... a facility at which hazardous substances ... are or have been stored, treated or disposed of shall, unless such facility has a permit under, or has been accorded interim status under, subtitle C of the Solid Waste Disposal Act ... notify the Administrator of the Environmental Protection Agency of the existence of such facility, specifying the amount and type of any hazardous substance to be found there, and any known, suspected, or likely releases of such substances from such facility. ... Any person who knowingly fails to notify the Administrator of the existence of any such facility shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both. *In addition, any such person who knowingly fails to provide the notice required by this subsection shall not be entitled to any limitation of liability or to any defenses to liability set out in section 9607 of this title:* ...

42 U.S.C. § 9603(c) (emphasis added).

BMI contends that under this statute, the Authority, Commonwealth Gas and the Prior Owner Defendants, as "owners or operators" of a "facility" at the time of "disposal" of hazardous substances, were obligated to provide notice of such disposal to the EPA Administrator within one hundred eighty days of December 11, 1980, and that because they failed to do so they are not entitled to seek limitation of liability or to assert any of the CERCLA defenses available under 42 U.S.C. § 9607. This claim for declaratory relief is based on an erroneous reading of the statute.

The sentence in 42 U.S.C. § 9603(c) upon which BMI bases its position follows immediately after the sentence which provides: "Any person who knowingly fails to notify the Administrator of the existence of any such facility shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both." The first two words in the following sentence are "[i]n addition." The sentence then continues to provide that "any *such person* who knowingly fails to provide the notice required by this subsection shall not be entitled to any limitation of liability or to any defenses to liability set out in section 9607 of this title." (emphasis added). Because the sentence begins with the words "in addition," the court believes that the additional penalties set forth in that sentence are applicable only to persons who satisfy the characteristics described in the immediately preceding sentence, *i.e.,* persons who have been convicted of knowingly failing to notify the EPA Administrator.

Moreover, the use of the words "such person" to describe those who are made subject to the forfeiture provisions is another indication that those additional penalties are only applicable to persons who have been convicted of failing to notify the EPA Administrator. One definition of the adjective "such" is "having a quality already or just specified—used to avoid repetition of a descriptive term." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2283 (1985). In the context of 42 U.S.C. § 9603(c), the phrase "such person" in the sentence providing for the forfeiture of defenses can only relate back to persons described in the immediately preceding sentence, *i.e.,* to persons who have been convicted of knowingly failing to provide notice.

Thus, the court finds that the penalty provision in 42 U.S.C. § 9603(c) which operates to deprive a party of the right to seek limitation of liability and the defenses to CERCLA liability which are made available by 42 U.S.C. § 9607 is only applicable to parties who have been convicted of failing to notify the EPA Administrator under the terms of 42 U.S.C. § 9603(c). Because BMI does not allege that the Authority, Commonwealth Gas or the Prior Owner Defendants have

been thusly convicted, Count III is deficient as a matter of law and the motion to dismiss Count III for failure to state a claim is granted.

## III. *Count V—The State Law Claim For Damages*

Count V sets forth a claim for money damages "of at least $2,000,000" for harm BMI allegedly has suffered and will continue to suffer "as a result of the contaminated condition of the Site, and the risks to human health or the environment associated with that contamination, which were not disclosed to the Apartment Partnership and about which it was completely unaware." Although BMI's pleadings did not state with particularity the basis upon which such relief is sought, its brief in reply to the motions to dismiss asserts that this relief is available under Virginia law and the Restatement (Second) of Torts § 353 (1965). The Authority and Commonwealth Gas have moved to dismiss Count V on the ground that the Supreme Court of Virginia has not adopted, and would not adopt, the Restatement (Second) of Torts § 353, and that, accordingly, Count V fails to state a claim upon which relief can be granted.

Section 353 provides, in pertinent part:

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

    (a) the vendee does not know or have reason to know of the condition or risk involved, and

    (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover or realize the risk.

(2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

■ BMI concedes that the Supreme Court of Virginia has never adopted this section of the Restatement. The Supreme Court of Virginia recently reiterated that, subject to limited exceptions, "the doctrine of *caveat emptor* continues to have vitality in the Commonwealth." *Boris v. Hill,* 237 Va. 160, 163, 375 S.E.2d 716, 717 (1989). The Supreme Court of Virginia has recognized an exception to that doctrine where "the seller says or does anything to throw the purchaser off guard or to divert him from making the inquiries and examinations that a prudent buyer ought to make." *Id.* at 164–165, 375 S.E.2d at 718 (citing *Horner v. Ahern,* 207 Va. 860, 153 S.E.2d 216 (1967) and *Armentrout v. French,* 220 Va. 458, 258 S.E.2d 519 (1979)). This exception applies only where the seller has acted affirmatively to mislead a buyer. The Supreme Court of Virginia has not extended the exception to require disclosure of latent defects in real property. Having reviewed the decisions of the Supreme Court of Virginia in *Boris, Horner* and *Armentrout,* this court is uncertain whether the Supreme Court of Virginia would adopt that section of the Restatement under the circumstance of this case.

The only Virginia decision cited in support of BMI's argument is an unpublished letter-opinion issued by the Circuit Court of the City of Richmond, *Moore v. Ladd Furniture, Inc.,* No. LS 956–2 (November 27, 1990) (Harris, J.), wherein the court held that the "underlying theory of Section 353 is consistent with the exception which Virginia case-law has carved from the doctrine of *caveat emptor,"* slip op. at 4, and on that basis it overruled a demurrer to a count based on § 353 of the Restatement (Second) of Torts.

It is well-settled that "while the decrees of 'lower state courts' should be 'attributed some weight ... the decision [is] not controlling ...' where the highest court of the State has not spoken on the point." *Commissioner of Internal Revenue v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886

(1967) (quoting *King v. Order of United Commercial Travelers*, 333 U.S. 153, 160–161, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948)). *Accord Brendle v. General Tire & Rubber Co.*, 505 F.2d 243 (4th Cir.1974).

Moreover, when the Virginia General Assembly recently enacted a statute requiring disclosure of specific defects by a seller of real estate, it made the law applicable only to the sale of residential property. *See* Va. Code Ann. § 55–517 *et seq.* (Michie 1993). This limited statutory curtailment of the doctrine of *caveat emptor* also makes it doubtful that the Supreme Court of Virginia, which historically has been reluctant to abrogate the common law, would adopt § 353 on the facts of this case.

■ However, the court finds that Restatement (Second) of Torts § 353 is inapplicable here in any event because, by its terms, that section operates only in cases where physical harm is caused to a person, and possibly to the property itself, not where the claim is for pecuniary loss.

In *Amland Properties Corp. v. Aluminum Co. of America*, 711 F.Supp. 784 (D.N.J. 1989), the court held that § 353 "on its face, appears intended to apply to situations in which a condition of land causes physical harm to an individual or the property, rather than to conditions which effect only pecuniary loss." *Id.* at 809. *See also Lyden Co. v. Citgo Petroleum Corp.*, 1991 WL 325786, *5 (N.D.Ohio 1991) where the court dismissed a claim for failure to allege physical harm to a person on the land. These conclusions are not only supported by the language of § 353 itself, which provides for liability by the vendor "for *physical harm* caused by the [latent, undisclosed] condition," (emphasis added), but also by the official comments to that section. *See, e.g.,* Comment c (condition "involves an unreasonable risk of physical harm to persons on the land"); Comment e (dealing with conditions in the land "dangerous to persons upon it"); Comment f (vendor liable for "bodily harm" caused by the condition).

BMI has alleged neither requisite for the application of § 353. Moreover, in its briefs and at oral argument on the various motions, BMI consistently has stated that the relief it seeks is compensation for the diminution in the value of the Site caused by the alleged contamination, as well as its response costs. The court finds that those damages are not recoverable under the Restatement (Second) of Torts § 353 because they constitute pecuniary losses, rather than compensation for physical injury. Accordingly, the motion to dismiss Count V is granted.

## CONCLUSION

For the foregoing reasons, the motions to dismiss Counts I, III and V of the counter-claims and cross-claims are granted.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all parties.

It is so ORDERED.