# CIRCUIT COURT OF SHENANDOAH COUNTY

Pamela K. Smith

v.

Sara M. Nonken,
Ruth Kellogg,
Gordon Milne, Jr.,
Cynthia G. Dellinger,
George V. Watkins,
and Dellinger-Shenandoah
Valley Realty, Inc.

August 14, 2000

Case No. (Law) CL98-129

BY JUDGE JOHN J. MCGRATH, JR.

This case is currently before this court on Defendants' Demurrers and Pleas in Bar to Plaintiff's Motion for Judgment seeking damages for breach of contract and actual and constructive fraud. For purposes of ruling on the demurrers, this court, under well established principles, must accept as true the allegations contained in Plaintiff's Motion for Judgment. *See Arlington Yellow Cab v. Transportation, Inc.*, 207 Va. 313, 319, 149 S.E.2d 877 (1966).

In June 1992, Defendants Nonken, Kellogg, and Milne became the owners of a tract of real estate with improvements in Shenandoah County, Virginia. Around April 1993, Dellinger-Shenandoah Valley Realty, Inc., a Virginia Corporation, whose chief executive officer is Cynthia G. Dellinger, entered into a listing agreement with Nonken, Kellogg, and Milne to sell the

property. The agreement was entered into by Dellinger-Shenandoah agent, Watkins, who at all times relevant to this case was employed by Dellinger-Shenandoah Valley Realty. The listing prepared by Watkins stated, in part, "lower level is finished," and an advertisement, also prepared by Watkins, stated that the house "features 3000 sq. ft. of living space."

In July 1993, Watkins showed the property to Plaintiff's husband two times; both times Watkins affirmed that the lower level of the house had an "electric radiant floor heating system." Watkins also affirmed that the heating and other systems in the house were in good working condition. Plaintiff's husband also met with Dellinger, who again affirmed that the lower level of the house had radiant heat. Following negotiations, Plaintiff tendered an offer to purchase the property. The contract, along with two standard Virginia Association of Realtors Amendment of Contract of Purchase, dated July 27, 1993, and August 7, 1993, were executed by all parties.

The contract between the parties provides, in part:

E. EQUIPMENT CONDITION AND INSPECTION. Purchaser agrees to accept the Property at settlement in its present physical condition, except as otherwise provided herein. Seller warrants that the appliances, heating and cooling equipment, plumbing and electric systems, and well and/or septic system will be in working order at the time of settlement or of Purchaser's occupancy, whichever occurs first. . . . Seller grants to Purchaser or his representative the right to make a preoccupancy or presettlement inspection to verify that the condition of the Property conforms to this contract.

Plaintiff alleges that Dellinger is responsible through a principal-agent relationship because Dellinger is the "principal broker" in the firm. Plaintiff cites the definition of "principal broker" as found in the Rules and Regulations of the Virginia Real Estate Board in effect at the time of the negotiation and signing of the subject contract. According to that definition, the principal broker is the individual broker designated by the firm to assure compliance with Chapter 21 of Title 54.1 of the Virginia Code and the regulations promulgated by the Real Estate Board; this person will also receive communications and notices from that Board. Within that definition, it is provided "the principal broker shall have responsibility for the activities of the firm and all its licenses." Defendant Dellinger asserts that no such principal-agent relationship existed between her and Watkins. That being so, Dellinger contends, she does not belong in this case as an individual defendant.

It is clear to this Court, after careful consideration of the alleged facts and the contracts that were stipulated to, that Watkins was the employee of Dellinger-Shenandoah and not of Dellinger individually. Dellinger-Shenandoah was a licensed broker at the time of the events, as was Dellinger herself. Virginia Code § 54.1-2100 allowed a corporation to hold a broker's license; however, § 54.1-2106 required each corporate officer actively engaged' in the business to be an individually licensed broker as well. Although Chapter 21 of Title 54.1 contains various provisions governing the activities and licensure of real estate brokers and agents, none of them impose vicarious liability on a broker for conduct by an agent of the firm simply by virtue of his or her position as the "principal broker" in a corporation. To hold that the "principle broker" in a corporation is responsible for the actions of the other agents would, in effect, negate the reason for allowing a corporation to be the "broker" because then both the corporation and the individual agents could be sued. Moreover, as is evidenced in Watkins' employment contract, the only principle-agent relationship that existed was between Watkins and Dellinger-Shenandoah. Dellinger, herself, is designated as an associate broker, and not someone with whom Watkins had a principle-agent relationship. In light of the foregoing, it is clear that Dellinger, as an individual, is not an appropriate party to this case, as such, the cause of action against her is dismissed.

The next issue to be addressed is that of the fraud counts against the Defendants. Plaintiff alleges that Defendants made material misrepresentations to her during the sale of the house, and as such, she was fraudulently induced to purchase the home. Plaintiff has alleged both actual and constructive fraud. Virginia courts, when dealing with issues of fraudulent inducement to purchase, have repeatedly reaffirmed the doctrine of *caveat emptor*. *See Kuczmanski v. Gill*, 225 Va. 367 (1983); *Watson v. Avon Street Business Ctr., Inc.*, 226 Va. 614 (1984). This doctrine provides that "where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. . . ." *Bruce Farms v. Coupe*, 219 Va. 287 (1978). However, the *caveat emptor* doctrine provides no protection to a seller who "makes false representations of a material fact, constituting an inducement to the contract, on which the buyer had a right to rely." *Watson*, 226 Va. at 618 (citing *Robberecht v. Maitland Bros.*, 220 Va. 109 (1979)). A seller may not "say or do anything to throw the purchaser off his guard or to divert him from making the inquires and examination which a prudent man ought to make." *Armentrout v. French*, 220 Va. 458, 466 (1979).

Acknowledging this principle and the exception to it, the Supreme Court, in 1984 found that even if a seller makes material misrepresentations to a

buyer, if these misrepresentations do not "divert" the buyer from making further inquiry or inspection, the exception to the doctrine does not apply and the buyer will not "be heard to say that he relied upon the previous misrepresentations of fact." *Watson*, 226 Va. at 619 (quoting *Masche v. Nichols*, 188 Va. 857, 868 (1949)). Specifically, the Court stated "if a buyer, having received a positive representation of material fact, is directed to the sources of information and undertakes an examination of the facts for himself, he is charged with all the knowledge which he might have obtained had he pursued the inquiry diligently to the end." *Watson*, 226 Va. at 619. In essence, if a buyer, despite any fraudulent statements made by the seller, still chooses to inspect or make further inquiry, he cannot "complain that he was misled by the seller's representation, however false it might have been because he was no longer justified in relying upon it." *Id.*

In this case, the Virginia Association of Realtors Residential Contract of Purchase was used. The contract provided, *inter alia*, in Part E that the heating equipment will be in working order and "grants to the purchaser or his representative the right to make a preoccupancy or presettlement inspection to verify that the condition of the property conforms to the Contract." Moreover, the purchaser had inserted an addendum which read: "Purchaser is requesting a home inspection of the property at their expense, to be done within 14 days of ratification of this contract. The inspection is to be to the purchaser's satisfaction or this contract is null and void." See paragraph 13 of attachment to Motion for Judgment. Finally, on August 7, 1993, and prior to closing, the plaintiff signed an amendment to the contract which stated in pertinent part: "# 13 OTHER ITEMS: Home Inspection. Purchaser hereby removed the home inspection contingency and will proceed to closing as per contract. Not to exclude any of the standard provisions."

In the case at hand, the fact that plaintiff obtained a home inspection clause and then removed the contingency is fatal to Plaintiff's fraud and constructive fraud claims. The purchaser had a full opportunity to inspect the premises. Nothing that was said by the Defendants was "calculated to forestall further inquiry and examination by the purchaser." *Id.* Defendants gave Plaintiff an opportunity to inspect the house; something as basic as a heating system is a prime example of an item that would be checked on such an inspection. In contrast to cases like *Van Deusen v. Snead*, where it was alleged that the sellers "put new mortar in cracks around the foundation" and placed "materials and the like in front of cracks in the basement" in order to prevent the buyers from detecting any problems, it is not alleged that Defendants did anything to *actively conceal* any problem with the heating system. *See Van Deusen v. Snead*, 247 Va. 324 (1994). There was nothing in this instance to

prohibit the buyer from checking the heating system herself before buying the home. In light of the foregoing, both the actual and the constructive fraud claims against all defendants will be dismissed because as a matter of law they cannot assert that they reasonably relied on defendants' alleged misrepresentations. *See e.g., Watson v. Avon Street Business Ctr., Inc.*, 226 Va. 614 (1984); *Harris v. Dunham*, 203 Va. 760 (1962).

Finally, after having dismissed the fraud claims, this Court must now consider the issue of punitive damages. It is a well-established rule of law in Virginia that punitive damages are generally not allowed in breach of contract cases unless the breach amounts to an independent, willful tort. *See Kamlar Corp. v. Haley*, 224 Va. 699, 706 (1983); *Wright v. Everett*, 197 Va. 608 (1956); *Spence v. Norfolk & W. R. Co.*, 92 Va. 102 (1895). As such, seeing as there are no longer any tort claims remaining in this case, the punitive damages claim will be dismissed.

This case will proceed as scheduled before a civil venire on October 10, 2000, on the breach of contract claim against Defendants Nonken, Kellogg, and Milne.

The Clerk of the Court is directed to send certified copies of this order to Richard E. Gardiner, Esq., Counsel for Plaintiff, Pamela K. Smith; Timothy R. Hughes, Esq., Counsel for Defendants Dellinger-Shenandoah Realty, Inc., Cynthia G. Dellinger, and George V. Watkins; and George W. Johnston, III, Esq., Counsel for Defendants Sara M. Nonken, Ruth Kellogg, and Gordon Milne, Jr.