Present:  All the Justices

GEORGE K. POLYZOS, ET AL.

OPINION BY
v.  Record No. 011778      JUSTICE LAWRENCE L. KOONTZ, JR.
                                    June 7, 2002
FRANK COTRUPI

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Robert W. Curran, Judge

In this appeal, we consider whether expert testimony was necessary to prove claims of negligence and breach of contract against a real estate agent when a contract for the sale of real estate required conveyance of a parcel larger than that which the owners retained the real estate agent to sell.

BACKGROUND

George K. Polyzos and Jennifer P. Polyzos (the Polyzoses) engaged Frank Cotrupi, a licensed real estate agent, to list, market, and sell a portion of a parcel of residential real estate they owned on the waterfront of the Warwick River in Newport News commonly known as 1109 Patrick Lane.

The Polyzoses' residence was located on the lot adjacent to the parcel they wished to sell.  The Polyzoses had purchased the parcel at 1109 Patrick Lane in order to adjust the boundary line between the two lots, thereby increasing the water frontage and the area of the rear yard of their residence.  After adjusting the boundary line, they intended to sell the house and the remaining portion of 1109 Patrick Lane (the reduced lot).  They

retained a surveyor to prepare a plat showing the revised boundary line between the two lots.

The Polyzoses erected a fence and installed landscaping along the new boundary line. However, they did not record the plat showing the revision because their attorney had advised them that doing so would result in the acceleration of their mortgage debt.

The Polyzoses subsequently engaged Cotrupi to sell the reduced lot. They advised him that the boundary line had been adjusted and that they wanted to sell only the reduced lot, not the entire lot as they had originally acquired it. Cotrupi prepared a real estate listing agreement, signed by the Polyzoses and Cotrupi, which referred to the property for sale as "1109 Patrick Lane."

The Polyzoses gave Cotrupi a revised plat of the property, which George Polyzos had copied from the surveyor's plat, reflecting only the reduced lot. Cotrupi was aware that the surveyor's plat showing the changed boundary line had not been recorded and, consequently, that the lot the Polyzoses intended to sell was smaller than that reflected as "1109 Patrick Lane" in the City's land records.

Cotrupi proceeded to market the property, communicating with potential buyers and their agents. He received and reviewed offers to purchase the property, including one from

2

Robert H. Pride and Patricia A. Pride (the Prides). The contract offer from the Prides, including a description of the property to be conveyed, was prepared by the Prides' real estate agent based on information Cotrupi had provided to the Realtors' Multiple Listing Service. The contract offer described the property to be conveyed as "/ / / Riverview Estates also known as 1109 Patrick Lane." The backslashes that begin the property description indicate spaces for reference to the lot, block, and section in the subdivision to complete the legal description.

When Cotrupi received the contract offer, he did not attach or incorporate into the contract a copy of the revised plat showing the adjusted boundary line. He testified that he had not thought it was necessary to do so because the revised plat prepared by George Polyzos had been previously available to the Prides and their real estate agent when viewing the property and because the fence and landscaping clearly indicated the location of the lot lines to the Prides when they viewed the property. Cotrupi further testified that he had discussed the boundary line adjustment with the Prides' real estate agent and that they had agreed that they would not include the lot number in the legal description of the property because Cotrupi did not know what lot number would be assigned by the City when the revised plat was recorded.

3

Prior to closing, a title agent communicating with the Prides inquired about the boundary line adjustment. The Prides asserted that they had not been advised of the boundary line adjustment prior to submitting their contract offer, and that they were entitled to acquire the entire original lot as bounded prior to the adjustment. As "an alternative," the Prides indicated to the Polyzoses their willingness to consider a reduction in the contract sale price.

After the Polyzoses refused to consider a reduction in the sale price and tendered a deed for the reduced lot, the Prides filed a bill of complaint against the Polyzoses for specific performance. They contended that the reference in the contract to the street address as the legal description of the property could only mean the property shown as that address in the city's land records and, thus, that the contract required conveyance of the entire original lot.

The Polyzoses denied that the contract required the conveyance of the entire original lot. They also filed a third-party action against Cotrupi, asserting that if specific performance were required, Cotrupi would be liable to them for professional negligence and breach of contract because the listing agreement authorized the sale of only the reduced lot.

At trial, the chancellor heard testimony from the Polyzoses, the Prides, and both real estate agents in accord

4

with the previously recited facts.* At the conclusion of the Polyzoses' evidence, the chancellor granted Cotrupi's motion to strike the Polyzoses' evidence and dismiss their third-party claims of negligence and breach of contract against him. In doing so, the chancellor ruled that the Polyzoses had failed to adduce any evidence through expert testimony with regard to the requisite standard of care owed by a licensed realtor to his clients. At the close of all the evidence, the trial court found that the contract required the Polyzoses to convey the entire original lot to the Prides.

The Polyzoses now appeal the dismissal of their third-party action against Cotrupi, contending that the chancellor erred in requiring expert testimony in the proof of both their negligence and breach of contract claims. They have not assigned error to the judgment in favor of the Prides and, accordingly, the Prides are not parties to this appeal.

DISCUSSION

Because of the unusual procedural posture of this case on appeal, we first address the standard of review applicable to the Polyzoses' assignments of error. The Polyzoses were not the

_____

* The testimony of the Prides' agent, including his statement that Cotrupi had not informed him of the boundary line change prior to execution of the sales contract, was taken after the dismissal of the Polyzoses' third-party claim against Cotrupi.

5

prevailing parties below. However, at the time the chancellor considered Cotrupi's motion to strike the evidence on the third-party claims against him, procedurally the Polyzoses were in the same position as plaintiffs who had presented their case-in-chief against the defendant. Under such circumstances, "a [chancellor] should review the evidence adduced at trial . . . accept[ing] as true all the evidence favorable to the plaintiff as well as any reasonable inference [the trier of fact] might draw therefrom which would sustain the plaintiff's cause of action." Austin v. Shoney's, Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997); accord Claycomb v. Didawick, 256 Va. 332, 335, 505 S.E.2d 202, 204 (1998).

This standard also applies to this Court's review of the chancellor's decision to strike the Polyzoses' evidence. Therefore, we consider the evidence in this case, and all reasonable inferences to be drawn from it, in the light most favorable to the Polyzoses. Lambert v. Downtown Garage, Inc., 262 Va. 707, 712, 553 S.E.2d 714, 716 (2001).

When so viewed, the evidence clearly establishes that Cotrupi understood that he was being retained as a realtor to list and market only that portion of "1109 Patrick Lane" that remained after the boundary line had been adjusted by the

Polyzoses to enlarge their adjoining lot. Similarly, it is a reasonable inference from the evidence that the Polyzoses and Cotrupi understood that the use of the street address in the listing agreement was meant to refer to the reduced lot because it would have retained that street address even if it were assigned a new lot number by the City.

The evidence viewed in the light most favorable to the Polyzoses further establishes that the Prides were not aware of the changed boundary line when they executed their purchase offer. The reasonable inference from that evidence is that Cotrupi failed to make them or their agent aware of that fact. In addition, it can be readily and reasonably inferred from the evidence that Cotrupi was aware, or should have been aware, that the sales contract did not contain a complete and accurate legal description of the property to be conveyed. Cotrupi, however, did not attach or incorporate into the contract the appropriate revised plat to resolve any ambiguity that might exist in the contract so as to protect the interests of the Polyzoses. Rather, he relied upon the fence and landscaping viewed by the Prides to satisfy himself that the contract pertained only to the reduced lot.

We now consider whether this view of the evidence would permit the Polyzoses to establish, without presenting expert testimony, that Cotrupi breached his professional duty to them

7

and/or breached the listing contract. As the Polyzoses note, Code § 54.1-2131 requires licensed realtors to "[p]erform in accordance with the terms of the brokerage relationship" and "[e]xercise ordinary care." Moreover, in adopting statutory guidelines for the conduct of realtors, the General Assembly has provided that "[t]he common law of agency relative to brokerage relationships in real estate transactions to the extent inconsistent with this article shall be expressly abrogated." Code § 54.1-2144.

We are of opinion that the existence of this statutory duty and standard of care does not dictate that a trier of fact must always require expert assistance to understand the appropriate practices of licensed realtors. We also recognize that there may be instances in which the acts of a realtor, as with other professionals, involve transactions or matters beyond the capacity of persons of ordinary intelligence to comprehend and, thus, to form an intelligent opinion about them without the assistance of expert testimony. Board of Supervisors v. Lake Services, Inc., 247 Va. 293, 297, 440 S.E.2d 600, 602 (1994).

We need not formulate a bright line rule applicable to all cases involving the alleged negligence of realtors. We have held that expert testimony is unnecessary when the alleged negligent acts or omissions of certain professionals clearly lie within the range of the common knowledge and experience of the

8

trier of fact.  See, e.g., Dickerson v. Fatehi, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997); Commercial Distributors, Inc. v. Blankenship, 240 Va. 382, 390, 397 S.E.2d 840, 845 (1990); Richmond Newspapers v. Lipscomb, 234 Va. 277, 296, 362 S.E.2d 32, 42 (1987).  We are of opinion that this case-by-case approach to the requirement for expert testimony is appropriate in cases involving the alleged negligence of realtors.

In the present case, it is manifest that any person of ordinary intelligence would grasp that a realtor should take care not to offer for sale property which he has not been contractually authorized to sell, nor should a realtor present to his client a contract which clearly fails to sufficiently reflect the accurate legal description of the property to be conveyed.  The failure of a realtor in either regard is negligence.  Similarly, it is not beyond the realm of common knowledge and understanding that when a contract gives authority to an agent to sell a specific portion of property, and the agent then offers for sale and procures a buyer for more than that portion of the property within his authority to sell, he has breached his contract with his principals.

Accordingly, we hold that at the time the chancellor granted Cotrupi's motion to strike the Polyzoses' evidence, under the appropriate standard of review the Polyzoses had adduced evidence sufficient to make out a prima facie case of

9

professional negligence and breach of contract.  Thus, the chancellor erred in sustaining the motion to strike and entering judgment on the third-party claims for Cotrupi.

CONCLUSION

For these reasons, we will reverse the judgment of the chancellor in favor of Cotrupi and remand the case to the trial court for a new trial on the issues of professional negligence and breach of contract.

<u>Reversed and remanded</u>.

JUSTICE KINSER, with whom JUSTICE LACY and JUSTICE LEMONS join, dissenting.

In the third-party complaint filed by George K. Polyzos and Jennifer P. Polyzos (the Polyzoses) against their real estate broker, Frank Cotrupi, the Polyzoses alleged that they relied upon Cotrupi's expertise "in preparing all written marketing materials, preparing the computerized posting on the Multiple Listing Service, reviewing and preparing the contract and counter-offer, and concluding their agreement" to sell their property known as 1109 Patrick Lane in Newport News, as reconfigured by the boundary line adjustment.  The Polyzoses further alleged that, as a result of an ambiguity in the purchase agreement, the buyers, Robert H. Pride, III, and Patricia A. Pride (the Prides), asserted that they had agreed to purchase the entire original lot situated at 1109 Patrick Lane

10

rather than the reduced lot resulting from the boundary line adjustment.  Consequently, the Polyzoses claimed that if the Prides were entitled to relief from the Polyzoses, then Cotrupi was liable to the Polyzoses for his "breach of the standard of care established for his profession, and/or breach of his contract with the Polyzos[es]."

Because the claims for negligence and breach of contract both turn on the sufficiency of the property description used by Cotrupi in the relevant contracts, the Polyzoses' burden of proof was the same under both theories of recovery.  See Seaward Int'l, Inc. v. Price Waterhouse, 239 Va. 585, 592 n.3, 391 S.E.2d 283, 287 n.3 (1990).  That burden was to produce "sufficient evidence of negligence, or breach of the terms of the . . . contract, to frame an issue of fact to be submitted to the jury."  Id. at 591-92, 391 S.E.2d at 287.  The Polyzoses failed to carry this burden because they did not present any expert testimony regarding the standard of care applicable to a licensed real estate broker in the situation presented by the facts of this case.

Those facts, in the light most favorable to the Polyzoses, show that, in the listing agreement entered into with the Polyzoses, Cotrupi described the property to be sold as "1109 Patrick Lane."  Likewise, that same description, with the lot, block, and section in the subdivision left blank, was used

11

in the purchase agreement with the Prides. Cotrupi never attached or incorporated into the listing agreement or the purchase agreement a copy of the plat showing the adjusted boundary line. Instead, he relied on his alleged oral communications with the Prides and their real estate agent, and also on the Prides' visual inspection of the property, to convey the fact that the Polyzoses were not selling the entire original lot located at 1109 Patrick Lane.

Given these facts, the issue with regard to the need for expert testimony is not whether Cotrupi was negligent or breached his listing contract with the Polyzoses by selling more of the lot located at 1109 Patrick Lane than the Polyzoses intended to sell. That is how the majority characterizes the issue. Instead, the properly framed question is whether Cotrupi's use of the term "1109 Patrick Lane" as the sole description of the property to be sold, and his reliance on his oral communications and the Prides' visual inspection, violated his professional duty to "[p]erform in accordance with the terms of the brokerage relationship" and to "[e]xercise ordinary care," Code §§ 54.1-2131(A)(1) and −2131(A)(4), or breached the terms of the listing agreement. I conclude that this question cannot be answered without expert testimony.

The sufficiency of the property description in the written agreements was not a matter within the common knowledge

12

of lay persons.  This is not a situation where a real estate broker merely used an incorrect lot number or street address in the relevant contracts.  The property to be sold was still correctly known as 1109 Patrick Lane and as lot number seven in Riverview Estates because the Polyzoses had not recorded the plat showing the boundary line adjustment in the city's land records.  To decide, in the situation presented here, whether Cotrupi violated the standard of care for his profession or breached the listing agreement with the Polyzoses, the trier of fact had to determine whether Cotrupi should have used a different legal description of the property, and if so, what description; whether he should have attached a copy of the plat to the relevant agreements; or whether Cotrupi was justified in merely relying on his oral communications and the property's visual appearance to identify what portion of the lot located at 1109 Patrick Lane was being sold.  All those matters require information beyond the common knowledge and experience of lay persons.

Thus, in my view, expert testimony was required "to establish the appropriate professional standard, to establish a deviation from that standard, and to establish that such a deviation was the proximate cause of the claimed damages." Seaward, 239 Va. at 592, 391 S.E.2d at 287 (citing Raines v. Lutz, 231 Va. 110, 113, 341 S.E.2d 194, 196 (1986)).  For these

13

reasons, I respectfully dissent and would affirm the judgment of the circuit court.  In reaching this conclusion, I am not suggesting that expert testimony is required in every instance where the actions and professional responsibilities of a licensed real estate broker are at issue.  However, the peculiar facts of this case necessitate such testimony.