# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Justin Boyd Walton
and Carmen Hunt Walton

v.

Betty Lynn Aquilar

October 28, 2010

Case No. 2010-106

BY JUDGE EDWARD L. HOGSHIRE

Plaintiffs Justin and Carmen Walton filed a Complaint based on three counts and ask for rescission of the purchase contract in the total amount paid for their Residence, including closing costs, the value of improvements made to the Residence, and damages to personal property resulting from a flood, totaling $150,839.44. Plaintiffs also ask for punitive damages, attorney's fees, and costs of litigation. Defendant Betty Lynn Aquilar, licensed real estate agent and part owner of the subject property, filed a Demurrer, arguing that Plaintiffs' Complaint failed to state a cause of action that gives rise to a legal duty of a seller to disclose drains and other conditions on properties not owned by seller. On October 5, 2010, the Court heard oral arguments by counsel on the Defendant's Demurrer. For the reasons stated below, the Court sustains Aquilar's Demurrer as to Count II and Count III but overrules the Demurrer with regard to Count I.

*Statement of Facts*

Plaintiffs Justin Boyd Walton and Carmen Hunt Walton purchased a townhouse located at 307A Riverside Drive, Charlottesville, Virginia, 22902 ("the Residence") from Defendant Betty Lynn Aquilar pursuant to a Virginia Association Realtors Contract of Purchase dated March 27, 2009. (Compl. ¶ 16.) At the time of the sale, Defendant was a licensed real estate agent working for Real Estate III, Inc., out of Fishersville, Virginia, and

part owner of the Residence. (Compl. ¶¶ 3-4.) Acquisition of the Residence was closed on May 14, 2009, by the delivery of a deed from Defendant to Plaintiffs. (Compl. ¶ 17.)

In the early morning of January 25, 2010, during a rain storm, water entered the Residence through the exterior doorway and eventually rose to a height of thirty-two inches. (Compl. ¶ 6.) The Charlottesville Fire Department and Public Works subsequently arrived at the Residence. (Compl. ¶¶ 6, 8.) The landlord of the neighboring townhouse, Charles Payne, directed officials of the Public Works to a drain located on the property of a public housing unit, owned by the Charlottesville Redevelopment & Housing Authority, about thirty feet away from the Residence. (Compl. ¶ 8.) When the officials cleared away debris clogging the drain, the flood subsided within approximately ten minutes. *Id.* The flooding caused damages to personal and real property. (Compl. ¶ 9.)

The Residence and surrounding property had flooded three times before the night of January 25, 2010, each time due a clogged drain on the adjacent public housing unit. (Compl. ¶ 13.) After the night of the flood, Plaintiffs learned that the Defendant had been informed of the flooding problem by the previous listing agent, John Tansey, who sold the property to Defendant. (Compl. ¶ 23.) Plaintiffs were not informed by the Defendant of the history of flooding or the problem with the drain on the adjacent property before they purchased the house in the spring of 2009. (Compl. ¶ 10.) However, the property was inspected by a licensed real estate inspector on April 6, 2009. (Compl. ¶ 18.)

*Standard of Review*

A demurrer tests whether a motion for judgment states a cause of action on which relief can be granted. *Grossmann v. Saunders*, 237 Va. 113, 119, 376 S.E.2d 66, 69 (1989). In ruling on a demurrer, the court considers the legal sufficiency of the pleadings, not disputed facts. *Welding, Inc. v. Bland County Service Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001). For the purposes of a demurrer, the court considers the facts in the light most favorable to the plaintiff. *Id.*

On demurrer, a court examines the allegations in the pleading as well as accompanying exhibits. *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 157 (1991). By filing a demurrer, the moving party admits all of the material, well-pleaded facts in the pleadings, including those expressly alleged, those that can fairly be viewed as impliedly alleged, and all reasonable inferences arising from the facts alleged. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993); *Flippo*, 241 Va. at 16-17, 400 S.E.2d at 157. But the pleadings must set forth sufficient facts constituting a foundation in law for the judgment sought, not simply conclusions of law. *Kitchen v. City of Newport News*, 275 Va. 378, 385, 657 S.E.2d 132, 136 (2008) (*citing Hubbard v. Dresser,*

*Inc.*, 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006)). Further, the demurrer does not admit the correctness of such conclusions of law. *Ward's Equip., Inc. v. New Holland, N. Am.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997) (*citing Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988)).

## Discussion

### A. Count I: Breach of Statutory Duty To Disclose Material Adverse Facts

Under Count I of the Complaint, Plaintiffs allege that the Residence frequently flooded due to the clogged drain on the adjacent property but that Defendant, as owner and agent, failed to disclose this materially adverse fact in writing, in violation of Virginia Code § 54.1-2131(B). (Compl. ¶¶ 28, 38.) Plaintiffs allege that the adjacent drain, the history of flooding, and the possibility of flooding in the future are material adverse facts about the property. (Compl. ¶ 31.) Defendant argues that, because the flooding was caused by a drain not located on the subject property, the drain is a condition explicitly excluded from the disclosure requirements of § 54.1-2131(B). (Def. Mem. 2.)

Virginia Code § 54.1-2131(B) establishes certain duties and conduct for real estate licensees, using the word "shall" to describe the conduct required by licensees toward prospective buyers. It is clear that the Virginia General Assembly intended to impute these performance standards into every relationship between licensees and potential buyers. *See Prudential Residential Servs., Ltd. P'ship v. Cash*, 70 Va. Cir. 27, 28 (2005). "Further, the Virginia Supreme Court has held that Va. Code § 54.1-2131 establishes guidelines for the conduct of realtors." *Id.* (*citing Polyzos v. Cotrupi*, 264 Va. 116, 122, 563 S.E.2d 775 (2002)).

Specifically, this subsection requires a licensee engaged by a seller to disclose in writing all material adverse facts pertaining to the physical condition of a property for sale. The statute explicitly excludes adjacent properties from the definition of physical condition of the property:

> As used in this section, the term "physical condition of the property" shall refer to the physical condition of the land and any improvements thereon, and shall not refer to: (i) matters outside the boundaries of the land or relating to adjacent or other properties in proximity thereto... .

Va. Code § 54.1-2131(B). Applying this definition to the case at hand, Defendant is correct that the faulty drain is a condition of an adjacent property and excluded from the disclosure requirements of the statute. However, whether flooding of a property directly resulting from a problem on an adjacent property is a physical condition of the subject property has never been addressed in Virginia.

The purpose of § 54.1-2131(B) is to ensure that real estate licensees exercise certain duties with respect to the sellers they represent and "treat all prospective buyers honestly" and with full disclosure. The statute was enacted to protect the public from fraud by licensees; as such, it is a remedial statute and should be liberally construed to prohibit harms that, while not specifically addressed, are within the spirit and purpose of the legislation. *Fitzhugh v. Anderson*, 12 Va. (2 Hen. & M.) 289 (1808); *City of Richmond v. Richmond Metro. Auth.*, 210 Va. 645, 172 S.E.2d 831 (1970); *see also* 17 M.J., *Statutes*, § 72 (2009).

Construing the language of the provision liberally, recurrent flooding of a property, from whatever cause, is a condition of the subject property. Plaintiffs seek rescission, not because the nearby drain clogs, but because their property is the subject of periodic flooding. It is reasonable that a buyer would want to know that a property has a history of and potential for flooding, and the statute is designed to ensure that licensees disclose this type of condition. The history of periodic flooding and the possibility of future flooding are physical conditions of the subject property. Whether this condition of the property was a material adverse fact is an issue for the jury.

Plaintiffs aver in the Complaint that the Residence had flooded at least three times prior to their purchase of the property, that Defendant had prior knowledge of the history of flooding, that Defendant failed to disclose this history in writing, and that Plaintiffs suffered damages as a result of this same flooding. In the light most favorable to Plaintiffs and taking as true all the facts set forth in the Complaint and attached Exhibits, Plaintiffs have sufficiently pleaded a breach of the statutory duty to disclose material adverse facts as required by Virginia Code § 54.1-2131(B).

B. *Count II: Common Law Fraudulent Misrepresentation and Count III: Common Law Constructive Fraud*

Under Counts II and III of the Complaint, Plaintiffs allege that Defendant made false representations by failing to disclose the adjacent drain problems and history of flooding, constituting both fraudulent misrepresentation and constructive fraud. (Compl. ¶¶ 42, 45.) Essentially, Plaintiffs claim actual fraud and, in the alternative, constructive fraud.

In Virginia, common law fraud is (1) a false misrepresentation (2) of a material fact (3) made intentionally or knowingly (4) with an intent to mislead (5) upon which the plaintiffs reasonably relied, (6) resulting in damages to plaintiffs. *Flippo v. CSC*, 262 Va. 48, 66, 547 S.E.2d 216, 227 (2001). Constructive fraud requires (1) a material misrepresentation of a past or present fact, (2) reasonable reliance by the plaintiff, (3) falsity in fact, (4) injury to the deceived party, and (5) intention, even if inadvertent, by the maker that the misrepresentation be acted upon. *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782

(1996). Constructive fraud differs from actual fraud in that it requires only mistake, as opposed to intent.

Under either theory of fraud, the false misrepresentation element may be satisfied by showing a failure of a duty to disclose a material fact where the concealing party knows the other is acting upon the assumption that the fact does not exist. *Van Deusen v. Snead*, 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994). Plaintiffs claim that the history of periodic flooding is a material fact that Defendant intentionally or negligently failed to disclose, upon which they justifiably relied, which resulted in monetary damages. (Compl. ¶¶ 42, 45.)

However, the doctrine of *caveat emptor* is a firmly established doctrine "when dealing with issues of fraudulent inducement to purchase, [which the courts] have repeatedly reaffirmed." *Smith v. Nonken*, 53 Va. Cir. 187, 189 (2000) (*citing Kuczmanski v. Gill*, 225 Va. 367, 302 S.E.2d 48 (1984); *Watson v. Avon Street Business Ctr., Inc.*, 226 Va. 614, 311 S.E.2d 795 (1984)). This doctrine requires purchasers of real estate to exercise ordinary care in inspecting the condition of the property rather than accepting the representations of a party "whose interest it is to mislead" the purchasers. *Kuczmanski*, 225 Va. at 369, 302 S.E.2d at 50 (*citing Horner v. Ahern*, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967); *Costello v. Larsen*, 182 Va. 567, 571-72, 29 S.E.2d 856, 858 (1944)).

The exception to *caveat emptor* is the doctrine of "diversion," where purchasers will be relieved of their duty to further inspect the property after the seller has taken steps to divert their attention or inquiries away from a problem. *See Armentrout v. French*, 220 Va. 458, 258 S.E.2d 519 (1979); *Watson*, 226 Va. at 618, 311 S.E.2d at 798; *Horner v. Ahern*, 207 Va. 860, 864, 153 S.E.2d 216, 219 (1967). In cases where this exception has been applied and fraud found, the sellers took affirmative steps to conceal problems by rearranging furniture, hiding smells, or lying in response to questions. *Id.* Where sellers take no steps to divert the purchasers' attention and where the buyers had ample opportunity to inspect the condition of the property, the diversion exception does not apply and *caveat emptor* governs.

In the case at hand, Plaintiffs do not allege that Defendant took steps to divert their attention away from the history of flooding problems, nor did the Plaintiffs ask Defendant if there was a problem or history of flooding. The Plaintiffs were given ample opportunity to inspect the property, which they did through the use of a professional inspector. Because the Defendant did not divert the Plaintiffs' attention away from the history of flooding, *caveat emptor* applies, and the Defendant's Demurrer is sustained on these two counts of common law fraud.

## *Conclusion*

The Demurrer is, therefore, sustained with regard to Count II: Fraudulent Misrepresentation and Count III: Constructive Fraud; however, the Demurrer is overruled with regard to Count I: Breach of Statutory Duty To Disclose Material Adverse Facts.

REPORTER'S NOTE: This case is cited in *Winesett v. Edwards-Soblotne* (2015), which is printed above at page 269.